UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:08-CR-133-01-SEB/KPF |
| | ) | |
| FREDERIC I. BOWLES, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## I N D I C T M E N T

### COUNT ONE
**(Wire Fraud - Title 18, United States Code, Section 1343)**

The Grand Jury charges that:

1. At all times relevant herein, FREDERIC I. BOWLES, JR. (hereinafter BOWLES), Defendant herein, resided in the Indianapolis, Indiana area, in the Southern District of Indiana.

2. At all times relevant herein, BOWLES was involved in the residential real estate investment business in and around Indianapolis, Indiana, in that BOWLES purchased and sold numerous residential real estate properties, as well as being involved in the mortgage broker business.

3. At all times relevant herein, Aarmor Mortgage & Financial Services, LLC (hereinafter "Aarmor Mortgage") was a mortgage brokerage company doing business in Indianapolis, Indiana. Aarmor obtained financing for the purchase of residential properties in

the Indianapolis, Indiana area from various mortgage lenders, including, but not limited to, Argent Mortgage Company, LLC, Rolling Meadows, Illinois (hereinafter "Argent").

4. Aarmor Mortgage was incorporated February 16, 2001 by BOWLES. BOWLES listed himself as the registered agent for Aarmor Mortgage, and showed his home address as the registered office of Aarmor Mortgage. On or about April 21, 2003, BOWLES filed a document with the Indiana Secretary of State, changing the office address to his business location in Indianapolis. On this document, BOWLES also listed himself as president of Aarmor Mortgage and listed his brother as secretary of the business. BOWLES employed several loan officers at Aarmor Mortgage, including both relatives and friends of his.

5. At various times relevant herein, BOWLES maintained bank accounts in his personal name, as well as in the names of the following businesses: Aarmor Mortgage, Vizion Realty, and Bowles Group LLP.

6. BOWLES and other individuals located residential properties in the Indianapolis area that were offered for sale by others and negotiated a fair market value purchase price for the properties with the sellers. BOWLES purchased these properties at a fair market value.

7. BOWLES and other individuals located investors to purchase these properties from BOWLES at a price far above the true market value. BOWLES and other individuals then assisted the investors in obtaining financing for these residential properties through Aarmor Mortgage. BOWLES also assisted these investors by locating and providing funds for the investors' down payments on these properties.

8. BOWLES and other individuals recruited individuals to prepare real estate appraisals for these properties, and title company closing agents to close loans for these

2

properties.

9. Beginning in or before 2003, and continuing through at least 2004, BOWLES and other individuals, both known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme to defraud, and to obtain and attempt to obtain money, funds, and other property, by means of false and fraudulent pretenses, representations and promises, which scheme is more fully described as follows:

A. It was a part of the scheme that BOWLES and other individuals acting on BOWLES' behalf located residential properties for sale in the Indianapolis area, and negotiated to purchase these properties at a fair market value from the sellers.

B. It was further a part of the scheme that BOWLES acted as the purchaser of these properties.

C. It was further a part of the scheme that BOWLES and other individuals acting on BOWLES' behalf located investors to purchase these properties from BOWLES at a price far in excess of their fair market value. BOWLES and other individuals acting on BOWLES' behalf then assisted these investors in originating loans to obtain financing for the properties through Aarmor Mortgage.

D. It was further a part of the scheme that BOWLES assisted the investors in purchasing the properties by obtaining money to make the investors' down payments on these properties. The effect of this was to falsely make it appear to the lender that the purchaser of the property was making a significant down payment on the property, thus further inducing the lender to make the loan.

E. It was further a part of the scheme that BOWLES or other individuals acting on

3

BOWLES' behalf prepared or caused to be prepared false and fraudulent loan applications, which were submitted to the mortgage lenders to obtain loans to purchase the properties.

F.      It was further a part of the scheme that BOWLES and other individuals acting on BOWLES' behalf recruited persons to prepare false appraisals which showed the value of the properties to be in excess of their true fair market value. It was further a part of the scheme that the appraiser who prepared many of the appraisals on these properties maintained his business office at the same location where BOWLES and other individuals maintained the offices of Aarmor Mortgage.

G.      It was further a part of the scheme that, based on the false information contained in the loan packages, Argent lent funds to the purported purchasers of the properties, which loans far exceeded the true value of the properties.

H.      It was further a part of the scheme that BOWLES and other individuals acting on BOWLES' behalf recruited title company closing agents to assist in the preparation and processing of false documents, including false and fraudulent settlement statements (Forms HUD-1).

I.      It was further a part of the scheme that BOWLES and individuals acting on BOWLES' behalf obtained the proceeds from the fraudulently obtained loans by causing checks to be issued at closing to himself or to other people or entities over which he had some control.

J.      It was further a part of the scheme that the funds fraudulently obtained from the scheme (the amount by which the loans exceeded the actual purchase price of the property) were shared by BOWLES and other individuals who participated in the scheme.

4

K.     It was further a part of the scheme that BOWLES and / or other individuals transmitted, or caused to be transmitted by means of wire communication in interstate commerce, various writings, signs, signals, pictures, or sounds, including the wiring of loan proceeds from bank accounts controlled by Argent to the bank account of the title company.

L.     It was further a part of the scheme that BOWLES committed the following acts and / or caused other individuals to commit the following acts relative to a property located at **2958-60 Broadway, Indianapolis, Indiana:**

1)     On or about May 1, 2003, BOWLES entered into a purchase agreement to purchase a total of fifteen (15) properties for $503,000.00. One of these properties was located at 2958-60 Broadway, Indianapolis, Indiana. The addendum to this purchase agreement stated that BOWLES was purchasing this property for $38,000.00. In order to make this multiple property purchase, BOWLES borrowed a total of $470,000.00 from a private lending company. On or about May 30, 2003, BOWLES acquired title to this property via Warranty

Deed.

2)     On or about June 23, 2003, an individual employed by Aarmor Mortgage requested an appraiser to prepare an appraisal of this property. This Aarmor employee was a relative of BOWLES. The appraisal request showed BOWLES to be the owner of the property, and showed the estimate of value or purchase price of the property to be $115,000.00. Based on this request, on or about June 25, 2003, an appraiser prepared and submitted to Aarmor Mortgage an

5

appraisal showing the value of the property to be $115,000.00.

3)  On or about August 15, 2003, BOWLES entered into a purchase agreement, agreeing to sell this property "As Is" to an investor, known as Investor #1, for $115,000.00.

4)  On or about August 15, 2003, an individual employed by Aarmor Mortgage filled out a loan application on behalf of Investor #1. This loan application indicated that the borrower (Investor #1) would be providing the down payment from "checking / savings," and further indicated that the borrower had $27,000.00 in a bank account, both of which statements were false.

5)  Aarmor Mortgage submitted a loan package, including the above-described purchase agreement, loan application and appraisal, to Argent. Based upon the representations on the documents contained in the loan package, Argent agreed to, and did, fund a loan to Investor #1, in the amount of $92,000.00.

6)  Prior to the loan closing on September 11, 2003, BOWLES contacted an individual with whom he regularly conducted real estate business (hereinafter "Individual #1") and requested Individual #1 to provide a cashier's check in the amount of $33,207.80 payable to the title company which was closing the loan. Individual #1 agreed to, and did, purchase this cashier's check. This cashier's check was presented to the title company by BOWLES to make Investor #1's down payment on the property.

7)  On or before September 11, 2003, a Settlement Statement Form HUD-1 (hereinafter "HUD-1") was prepared for the closing of this loan. The HUD-1

6

falsely stated that Investor #1 was making a down payment of $32,597.88. The
HUD-1 further further falsely stated that a $64,400.00 first mortgage payoff
was due to the private lender from whom BOWLES borrowed the money to
purchase the property. On or about September 11, 2003, BOWLES signed this
HUD-1, knowing both of those statements to be false.

8)   On or about September 15, 2003, the title company issued a check to BOWLES
in the amount of $48,967.81, for the seller's proceeds from the loan closing.
BOWLES deposited this check to his personal account. On or about September
16, 2003, BOWLES withdrew $33,208.00 from that account and purchased an
official check in the amount of $33,208.00, payable to Individual #1,
reimbursing him for providing the money for the investor's down payment. On
or about that same date, BOWLES wrote a personal check to Individual #1, in
the amount of $500.00, as a fee for providing the down payment money.

9)   The loan issued to Investor #1 for this property went into foreclosure. On or
about June 21, 2006, the property at 2958-60 Broadway was purchased out of
foreclosure, for $38,000.00, by Bowles Group, LLP, a company owned and
controlled by BOWLES and other individuals.

10)  On or about September 15, 2003 in the Southern District of Indiana and
elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of
executing the aforesaid scheme to defraud and to obtain money by false and
fraudulent pretenses, representations and promises, knowingly transmitted and
caused to be transmitted, by means of wire transmission in interstate commerce,

7

certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused $89,323.12 to be wire transferred from a bank account of Argent Mortgage Company, LLC at Deutsche Bank Trust Company, New York, New York, to a bank account of Barrister's Title Company in Indianapolis, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT TWO
### (Money Laundering - Title 18, United States Code, Section 1957)
### (Relating to Specified Unlawful Activity in Count One - Wire Fraud - Property Located at 2958-60 Broadway)

The Grand Jury further charges that:

1. The Grand Jury realleges and incorporates by reference all allegations of Count One herein.

2. On or about September 16, 2003, in the Southern District of Indiana and elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property whose value was greater than $10,000.00, to wit: FREDERIC I. BOWLES JR. withdrew and caused to be withdrawn from his bank account at Union Federal Bank, Indianapolis, Indiana, $33,208.00 cash, and used said funds to purchase a Union Federal Bank Official Check in the amount of $33,208.00, such property having been derived from the specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section 1343, to wit: said $33,208.00 representing fraudulently obtained proceeds of the $92,000.00 loan disbursed relative to the sale of 2958-60

8

Broadway, as more fully set forth in Count One above;

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT THREE
### (Wire Fraud - Title 18, U.S.C., Section 1343)

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through
9K of Count One as if fully set forth herein.

2.     It was further a part of the scheme that BOWLES committed the following acts
and / or caused other individuals to commit the following acts relative to a property located at

**921 Hamilton, Indianapolis, Indiana:**

1)     On or about February 18, 2003, BOWLES purchased a property located at 921
Hamilton, Indianapolis, Indiana for approximately $31,000.00. BOWLES
borrowed the money to purchase this property from Individual #1.

2)     On or about June 20, 2003, an individual employed by Aarmor Mortgage
requested an appraiser to prepare an appraisal of this property. The request
showed the sales price and estimated value of the property to be $80,000.00.
Based on this request, on or about September 16, 2003, an appraiser prepared
and submitted to Aarmor Mortgage an appraisal showing the value of the
property to be $80,000.00.

3)     On or about September 5, 2003, BOWLES entered into a purchase agreement,
agreeing to sell this property "As Is" to an investor, known as Investor #2, for

9

$70,000.00.

4)   On or about September 5, 2003, an individual employed by Aarmor Mortgage filled out a loan application on behalf of Investor #2. This loan application indicated that the borrower (Investor #2) would be providing the down payment from "checking / savings, and seller carryback," and further indicated that the borrower had $1,500.00 in a savings account, both of which statements were false.

5)   Aarmor Mortgage submitted a loan package, including the the above-described purchase agreement, loan application and appraisal, to Argent. Based upon the representations on the documents contained in the loan package, Argent agreed to, and did, fund a loan to Investor #2, in the amount of $56,000.00.

6)   Prior to the loan closing on October 1, 2003, BOWLES contacted Individual #1 and requested him to provide a cashier's check in the amount of $14,000.00 payable to the title company which was closing the loan. Individual #1 agreed to, and did, purchase this cashier's check. In addition, on October 1, 2003, BOWLES withdrew $1,328.24 from his own bank account and purchased a cashier's check for that amount payable to the title company which was closing the loan. These two cashier's checks, totaling $15,328.24, were presented to the title company by BOWLES to make Investor #2's down payment on the property.

7)   On or before October 1, 2003, a HUD-1 was prepared for the closing of this loan. The HUD-1 falsely stated that Investor #2 was making a down payment

10

of $15,328.24. On or about October 1, 2003, BOWLES signed this HUD-1, knowing that Investor #2 was not providing any down payment funds.

8)   On or about October 1, 2003, the title company issued a check to BOWLES in the amount of $30,693.65, for the seller's proceeds from the loan closing. BOWLES deposited this check to his personal account. On or about October 3, 2003, BOWLES wrote a check on his account in the amount of $14,000.00, payable to Individual #1, reimbursing Individual #1 for his providing the money for Investor #2's down payment. On or about October 3, 2003, BOWLES also withdrew $6,000.00 from his bank account and purchased an Official Check in the amount of $6,000.00 payable to Investor #2, for purchasing the property.

9)   The loan issued to Investor #2 went into foreclosure. On or about June 24, 2005, the property at 921 Hamilton was purchased for $16,500.00.

10)  On or about October 1, 2003 in the Southern District of Indiana and elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of executing the aforesaid scheme to defraud and to obtain money by false and fraudulent pretenses, representations and promises, knowingly transmitted and caused to be transmitted, by means of wire transmission in interstate commerce, certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused $54,990.76 to be wire transferred from a bank account of Argent Mortgage Company, LLC at Deutsche Bank Trust Company in New York, New York, to a bank account of American Title Services in Plainfield, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

11

## COUNT FOUR
### (Money Laundering - Title 18, United States Code, Section 1957)
### (Relating to Specified Unlawful Activity in Count Three -
### Wire Fraud - Property Located at 921 Hamilton)

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference all allegations of Count

Three herein.

2.     On or about October 4, 2003, in the Southern District of Indiana and elsewhere,

FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and attempted to engage

in a monetary transaction by, through, and to a financial institution, affecting interstate

commerce, in criminally derived property whose value was greater than $10,000.00, to wit:

FREDERIC I. BOWLES, JR. issued a check in the amount of $14,000.00, on an account at

Union Federal Bank, Indianapolis, Indiana, such property having been derived from the

specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section

1343, to wit: said $14,000.00 representing fraudulently obtained proceeds of the $56,000.00

loan disbursed relative to the sale of 921 Hamilton, as more fully set forth in Count Three

above;

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT FIVE
### (Wire Fraud - Title 18, U.S.C., Section 1343)

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through

12

9K of Count One as if fully set forth herein.

2.     It was further a part of the scheme that BOWLES committed the following acts and / or caused other individuals to commit the following acts relative to a property located at **4109 Rookwood, Indianapolis, Indiana:**

1)     On or about February 21, 2003, BOWLES purchased a property located at 4109 Rookwood, Indianapolis, Indiana for approximately $19,000.00.  BOWLES borrowed the money to purchase this property from Individual #1.

2)     On or about October 14, 2003, BOWLES entered into a purchase agreement, agreeing to sell this property "As Is" to an investor, known as Investor #3, for $140,000.00.

3)     On or about October 17, 2003, an individual employed by Aarmor Mortgage filled out a loan application on behalf of Investor #3.  This loan application falsely represented the amount of Investor #3's income and contained supporting documentation bearing a forged signature of Investor #3.

4)     On or about November 4, 2003, at the request of an employee of Aarmor Mortgage, an appraiser prepared and submitted an appraisal to Aarmor Mortgage  showing the value of this property (as of June 17, 2003) to be $150,000.00.  An addendum to this appraisal listed a number of major updates and remodeling had been done to this property, when in fact, no significant improvements had been made to the property.

5)     Aarmor Mortgage submitted a loan package, including the the above-described purchase agreement, loan application and appraisal, to Argent.  Based upon the

13

representations on the documents contained in the loan package, Argent agreed
to, and did, fund a loan to Investor #3, in the amount of $112,000.00.

6)     Prior to the loan closing on November 13, 2003, BOWLES contacted
       Individiual #1 and requested him to provide a cashier's check in the amount of
       $33,474.60, payable to the title company which was closing the loan.
       Individual #1 agreed to, and did, purchase this cashier's check. This cashier's
       check was presented to the title company by BOWLES to make Investor #3's
       down payment on the property.

7)     On or before November 13, 2003, a HUD-1 was prepared for the closing of this
       loan. The HUD-1 falsely stated that Investor #3 was making a down payment
       of $33,474.60. On or about November 13, 2003, BOWLES signed this HUD-
       1, knowing that this statement was false.

8)     On or about November 14, 2003, the title company issued a check to BOWLES
       in the amount of $103,260.81, for the seller's proceeds from the loan closing.
       BOWLES endorsed this check and gave it to Individual #1. Individual #1
       deposited this to his bank account.

9)     The loan issued to Investor #3 went into foreclosure.

10)    On or about November 14, 2003 in the Southern District of Indiana and
       elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of
       executing the aforesaid scheme to defraud and to obtain money by false and
       fraudulent pretenses, representations and promises, knowingly transmitted and
       caused to be transmitted, by means of wire transmission in interstate commerce,

14

certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused

$110,919.40 to be wire transferred from a bank account of Argent Mortgage

Company, LLC at Deutsche Bank Trust Company in New York, New York, to

a bank account of American Title Services in Plainfield, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX
### (Money Laundering - Title 18, United States Code, Section 1957)
### (Relating to Specified Unlawful Activity in Count Five -
### Wire Fraud - Property Located at 4109 Rookwood)

The Grand Jury further charges that:

1.    The Grand Jury realleges and incorporates by reference all allegations of Count

Five herein.

2.    On or about November 14, 2003, in the Southern District of Indiana and

elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and

attempted to engage in a monetary transaction by, through, and to a financial institution,

affecting interstate commerce, in criminally derived property whose value was greater than

$10,000.00, to wit: FREDERIC I. BOWLES JR. caused a cashier's check in the amount of

$103,260.81 to be deposited to a Union Federal Bank account controlled by Individual #1,

such property having been derived from the specified unlawful activity of wire fraud, in

violation of Title 18, United States Code, Section 1343, to wit: said $103,260.81 representing

fraudulently obtained proceeds of the $112,000.00 loan disbursed relative to the sale of 4109

Rookwood, as more fully set forth in Count Five above;

15

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT SEVEN
### (Wire Fraud - Title 18, U.S.C., Section 1343)

The Grand Jury further charges that:

1.      The Grand Jury realleges and incorporates by reference paragraphs 1 through

9K of Count One as if fully set forth herein.

2.      It was further a part of the scheme that BOWLES committed the following acts

and / or caused other individuals to commit the following acts relative to a property located at

**3245-47 Winthrop, Indianapolis, Indiana:**

      1)      On or about May 1, 2003, BOWLES entered into a purchase agreement to

purchase a total of fifteen (15) properties for $503,000.00.  One of these

properties was located at 3245-47 Winthrop, Indianapolis, Indiana.  The

addendum to this purchase agreement stated that BOWLES was purchasing this

property for $23,000.00.  In order to make this multiple property purchase,

BOWLES borrowed a total of $470,000.00 from a private lending company.

On or about May 30, 2003, BOWLES acquired title to this property.

      2)      On or about October 14, 2003, BOWLES entered into a purchase agreement,

agreeing to sell this property "As Is" to an investor, known as Investor #4, for

$70,000.00.

      3)      On or about October 23, 2003, an individual employed by Aarmor Mortgage

requested an appraiser to prepare an appraisal of this property.  The request

showed the sales price and estimated value of the property to be $70,000.00.
Based on this request, on or about November 4, 2003, an appraiser prepared
and submitted to Aarmor Mortgage an appraisal showing the value of the
property to be $76,000.00.  An addendum to this appraisal listed a number of
updates and remodeling had been done to this property, when in fact, no
significant improvements had been made.  In addition, an addendum to the
appraisal stated that the property was purchased May 30, 2003 for $60,000.00,
when in fact the actual price was $23,000.00.

4)   On or before November 20, 2003, an individual employed by Aarmor Mortgage
filled out a loan application on behalf of Investor #4.  This loan application
indicated that the borrower (Investor #4) would be providing the down payment
from "checking and savings," which statement was false.

5)   Aarmor Mortgage submitted a loan package, including the purchase agreement,
loan application and appraisal, to Argent.  Based upon the representations on
the documents contained in the loan package, Argent agreed to, and did, fund a
loan to Investor #4, in the amount of $56,000.00.

6)   Prior to the loan closing on November 20, 2003, BOWLES contacted
Individiual #1  and requested him to provide a cashier's check in the amount of
$23,851.70 payable to the title company which was closing the loan.  Individual
#1 agreed to, and did, purchase this cashier's check.  This cashier's check was
presented to the title company by BOWLES to make Investor #4's down
payment on the property.  The amount of the down payment was $18,222.55;

17

the excess amount of $5,629.15 was paid to Investor #4 after the closing.

7)   On or before November 20, 2003, a HUD-1 was prepared for the closing of this
     loan. The HUD-1 falsely stated that Investor #4 was making a down payment
     of $18,222.55. The HUD-1 also failed to disclose that Investor #4 was being
     paid $5,629.15 from the loan proceeds. On or about November 20, 2003,
     BOWLES signed this HUD-1, knowing that Investor #4 was not providing any
     down payment funds, and that Investor #4 was receiving a portion of the loan
     proceeds.

8)   On or about November 20, 2003, the title company issued a check to BOWLES
     in the amount of $68,278.72, for the seller's proceeds from the loan closing.
     BOWLES deposited this check to the Vizion Realty Group LLC bank account,
     an account controlled by BOWLES. On or about November 24, 2003,
     BOWLES withdrew $25,094.94 from the Vizion Realty account and purchased
     a Union Federal Bank official check payable to American Title Services in that
     same amount. BOWLES then used that check to make a down payment for
     Investor #2 on a property located at 4220 Evanston, Indianapolis, Indiana, as
     more fully described in Count Nine below.

9)   The loan issued to Investor #4 went into foreclosure. On or about February 9,
     2005, the property at 3245-47 Winthrop was purchased out of foreclosure for
     $30,000.00.

10)  On or about November 20, 2003, in the Southern District of Indiana and
     elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of

18

executing the aforesaid scheme to defraud and to obtain money by false and

fraudulent pretenses, representations and promises, knowingly transmitted and

caused to be transmitted, by means of wire transmission in interstate commerce,

certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused

$55,297.70 to be wire transferred from a bank account of Argent Mortgage

Company, LLC at JP Morgan Chase in Texas, to a bank account of American

Title Services in Plainfield, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHT
### (Money Laundering - Title 18, United States Code, Section 1957)
### (Relating to Specified Unlawful Activity in Count Seven -
### Wire Fraud - Property Located at 3245-47 Winthrop)

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference all allegations of Count

Seven herein.

2.     On or about November 24, 2003, in the Southern District of Indiana and

elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and

attempted to engage in a monetary transaction by, through, and to a financial institution,

affecting interstate commerce, in criminally derived property whose value was greater than

$10,000.00, to wit: FREDERIC I. BOWLES, JR. withdrew and caused to be withdrawn from

the Vizion Realty Group LLC bank account at Union Federal Bank, a total of $25,094.94

cash, and used said funds to purchase a Union Federal Bank Cashier's Check in the amount of

19

$25,094.94, such property having been derived from the specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section 1343, to wit: said $25,094.94 representing fraudulently obtained proceeds of the $56,000.00 loan disbursed relative to the sale of 3245-47 Winthrop, as more fully set forth in Count Seven above;

All in violation of Title 18, United States Code, Section 1957 and 2.

## COUNT NINE
### (Wire Fraud - Title 18, United States Code, Section 1343)

The Grand Jury further charges that:

1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 9K of Count One as if fully set forth herein.

2. It was further a part of the scheme that BOWLES committed the following acts and / or caused other individuals to commit the following acts relative to a property located at

**4220 Evanston, Indianapolis, Indiana:**

1) On or about October 22, 2003, BOWLES purchased a property located at 4220 Evanston, Indianapolis, Indiana for approximately $39,500.00. BOWLES borrowed the money to purchase this property from Individual #1.

2) On or about November 6, 2003, BOWLES entered into a purchase agreement, agreeing to sell this property "As Is" to Investor #2 for $82,000.00.

3) On or about November 6, 2003, an individual employed by Aarmor Mortgage filled out a loan application on behalf of Investor #2. This loan application indicated that the borrower (Investor #2) would be providing the down payment

20

from "checking / savings," and further stated that the borrower had $12,500.00 in a savings account, both of which statements were false.

4)   On or about November 7, 2003, an individual employed by Aarmor Mortgage requested an appraiser to prepare an appraisal of this property. The request showed the sales price and estimated value of the property to be $85,000.00. Based on this request, on or about November 14, 2003, an appraiser prepared and submitted to Aarmor Mortgage an appraisal showing the value of the property to be $82,000.00. An addendum to this appraisal listed a number of updates and remodeling had been done to this property, when in fact, no significant improvements had been made.

5)   Aarmor Mortgage submitted a loan package, including the the above-described purchase agreement, loan application and appraisal, to Argent. Based upon the representations on the documents contained in the loan package, Argent agreed to, and did, fund a loan to Investor #2, in the amount of $57,400.00.

6)   Prior to the loan closing on November 24, 2003, BOWLES withdrew $25,094.94 from his Vizion Realty account and purchased a Union Federal Bank Official Check payable to American Title Services. BOWLES presented this official check to the title company to make Investor #2's down payment on the property.

7)   On or before November 24, 2003, a HUD-1 was prepared for the closing of this loan. The HUD-1 falsely stated that Investor #2 was making a down payment of $25,094.94. On or about November 24, 2003, BOWLES signed this HUD-

21

1, knowing that Investor #2 was not providing any down payment funds.

8)     On or about November 24, 2003, the title company issued a check to BOWLES
in the amount of $37,135.83, for the seller's proceeds from the loan closing.
BOWLES endorsed this check and gave it to Individual #1.  Individual #1
deposited this check to his bank account on November 24, 2003.

9)     The loan issued to the investor went into foreclosure.  On or about September
25, 2007, the property at 4220 Evanston was purchased for $31,300.00.

10)    On or about November 24, 2003 in the Southern District of Indiana and
elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of
executing the aforesaid scheme to defraud and to obtain money by false and
fraudulent pretenses, representations and promises, knowingly transmitted and
caused to be transmitted, by means of wire transmission in interstate commerce,
certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused
$56,677.06 to be wire transferred from a bank account of Argent Mortgage
Company, LLC at Deutsche Bank Trust Company, New York, New York, to a
bank account of American Title Services in Plainfield, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.


### COUNT TEN
**(Money Laundering - Title 18, United States Code, Section 1957)**
**(Relating to Specified Unlawful Activity in Count Nine -**
**Wire Fraud - Property Located at 4220 Evanston)**

The Grand Jury further charges that:

22

1.     The Grand Jury realleges and incorporates by reference all allegations of Count Nine herein.

2.     On or about November 24, 2003, in the Southern District of Indiana and elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and attempted to engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property whose value was greater than $10,000.00, to wit: FREDERIC I. BOWLES, JR. caused a cashier's check in the amount of $37,135.83 to be deposited to a Union Federal Bank account controlled by Individual #1, such property having been derived from the specified unlawful activity of wire fraud, in violation of Title 18, United States Code, Section 1343, to wit: said $37,135.83 representing fraudulently obtained proceeds of the $57,400.00 loan disbursed relative to the sale of 4220 Evanston, as more fully set forth in Count Nine above;

All in violation of Title 18, United States Code, Section 1957 and 2.

### COUNT ELEVEN
**(Wire Fraud - Title 18, United States Code, Section 1343)**

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference paragraphs 1 through 9K of Count One as if fully set forth herein.

2.     It was further a part of the scheme that BOWLES committed the following acts and / or caused other individuals to commit the following acts relative to a property located at **3668 Birchwood:**

23

1)   On or about January 15, 2004, BOWLES purchased a property located at 3668
     Birchwood, Indianapolis, Indiana for approximately $27,000.00. BOWLES
     borrowed the money to purchase this property from Individual #1.

2)   On or about February 19, 2004, BOWLES entered into a purchase agreement,
     agreeing to sell this property "As Is" to Investor #2, for $95,000.00.

3)   On or about February 24, 2004, an individual employed by Aarmor Mortgage
     filled out a loan application on behalf of Investor #2. This loan application
     indicated that the borrower (Investor #2) would be providing the down payment
     from "checking / savings, and seller carryback," which statement was false.

4)   On or about February 24, 2004, an individual employed by Aarmor Mortgage
     requested an appraiser to prepare an appraisal of this property. The request
     showed the sales price and estimated value of the property to be $95,000.00.
     Based on this request, on or about March 5, 2004, an appraiser prepared and
     submitted to Aarmor Mortgage an appraisal showing the value of the property
     to be $95,000.00.

5)   Aarmor Mortgage submitted a loan package, including the the above-described
     purchase agreement, loan application and appraisal, to Argent. Based upon the
     representations on the documents contained in the loan package, Argent agreed
     to, and did, fund a loan to Investor #2, in the amount of $80,750.00.

6)   Prior to the loan closing on March 16, 2004, BOWLES withdrew $5,001.70
     from his own bank account and purchased an Official Check for that amount
     payable to the title company which was closing the loan. BOWLES presented

24

this Official check to the title company to make Investor #2's down payment on the property.

7)      On or before March 16, 2004, a HUD-1 was prepared for the closing of this loan. The HUD-1 falsely stated that Investor #2 was making a down payment of $5,001.70. On or about March 16, 2004, BOWLES signed this HUD-1, knowing that this statement was false.

8)      On or about March 16, 2004, the title company issued a check to BOWLES in the amount of $50,225.86, for the seller's proceeds from the loan closing. BOWLES deposited this check to his personal account. On or about March 2, 2004, BOWLES withdrew $40,299.85 and purchased a Union Federal Bank Official Check payable to Countrywide Home Loans, where BOWLES had a mortgage on his personal residence. BOWLES submitted this check to Countrywide as payment on his mortgage.

9)      The loan issued to the investor went into foreclosure. On or about September 28, 2005, the property at 3668 Birchwood was purchased for $35,900.00.

10)     On or about March 16, 2004, in the Southern District of Indiana and elsewhere, FREDERIC I. BOWLES, JR., Defendant herein, for the purpose of executing the aforesaid scheme to defraud and to obtain money by false and fraudulent pretenses, representations and promises, knowingly transmitted and caused to be transmitted, by means of wire transmission in interstate commerce, certain writings, signs, signals, pictures, and sounds, to wit, BOWLES caused $79,871.60 to be wire transferred from a bank account of Argent Mortgage

Company, LLC at Deutsche Bank Trust Company, New York, New York, to a

bank account of American Title Services in Plainfield, Indiana.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TWELVE
### (Money Laundering - Title 18, United States Code, Section 1957)
### (Relating to Specified Unlawful Activity in Count Eleven -
### Wire Fraud - Property Located at 3668 Birchwood)

The Grand Jury further charges that:

1.     The Grand Jury realleges and incorporates by reference all allegations of Count

Eleven herein.

2.     On or about March 20, 2004, in the Southern District of Indiana and elsewhere,

FREDERIC I. BOWLES, JR., Defendant herein, knowingly engaged and attempted to engage

in a monetary transaction by, through, and to a financial institution, affecting interstate

commerce, in criminally derived property whose value was greater than $10,000.00, to wit:

FREDERIC I. BOWLES, JR. withdrew and caused to be withdrawn from his bank account at

Union Federal Bank, a total of $40,299.85 cash, and used said funds to purchase a Union

Federal Bank Official Check in the amount of $40,299.85, such property having been derived

from the specified unlawful activity of wire fraud, in violation of Title 18, United States Code,

Section 1343, to wit: said $40,299.85 representing fraudulently obtained proceeds of the

$80,750.00 loan disbursed relative to the sale of 3668 Birchwood, as more fully set forth in

Count Eleven above;

26

All in violation of Title 18, United States Code, Section 1957 and 2.

A TRUE BILL:

FOREPERSON

TIMOTHY M. MORRISON
United States Attorney

By: Susan N. Dowd

Susan Heckard Dowd
Assistant United States Attorney

27